**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION**

| | |
|---|---|
| JEREMY GIELAROWSKI,<br><br>  Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>  Defendant. | **Case No.:** 5:25-cv-1334 (ECC/TWD)<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>  1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff JEREMY GIELAROWSKI, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax").

## I.     INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* committed by the Defendant.

2.     Plaintiff contends that the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

3.     "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.     JURISDICTION AND VENUE

1

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because

Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA)

(permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in the Northern District of New York is proper pursuant to 28 U.S.C. §

1391 because Defendant regularly transacts business within this District or is otherwise

subject to personal jurisdiction in this District, and a substantial part of the events giving rise

to Plaintiff's claims occurred in this District.

### III.    PARTIES

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this

Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person who resides in Pulaski, New York.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Equifax Information Services, LLC ("Equifax") is one of the largest

credit reporting agencies in the United States and is engaged in the business of assembling

and disseminating credit reports concerning hundreds of millions of consumers.  Equifax is a

"consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is

regularly engaged in the business of assembling, evaluating, and dispersing information

concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C.

§ 1681a(d)(1) of the FCRA, to third parties.

10.     Equifax's principal place of business is located at 1550 Peach Tree Street,

N.W., Atlanta, GA 30309.

11.     During all times pertinent to this Complaint, the Defendant was authorized to conduct business in the State of New York and conducted business in the State of New York on a routine and systematic basis.

12.     During all times pertinent to this Complaint, the Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13.     Any violations by the Defendant were not in good faith, were knowing, negligent, willful, and/or intentional.

## IV.     FACTUAL BACKGROUND

14.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.     Equifax, one of the three major consumer reporting agencies (at times referred to as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

19.     Equifax regularly obtains consumer bankruptcy information to include in consumer reports.

20.     Equifax regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

21.     The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in its subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.     Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681(e)(b).

23.     Equifax knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

24.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

25.     A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

26.     Equifax is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding in bankruptcy court, are discharged.

27.     However, Equifax also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

28.     Further, Equifax knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

29.     Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Equifax independently obtains consumer bankruptcy case information.

30.     Equifax also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

31.     Despite the availability of accurate consumer information, Equifax regularly reports inaccurate information about accounts even after consumers receive a Discharge Order.

32.     Equifax regularly publishes consumer information that conflicts with information: provided by data furnishers to Equifax, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

33.     Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by 15 U.S.C. § 1681(e)(b).

34.     Equifax knows the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in its own files.

35.     Equifax also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

36.     Consumers have filed countless lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax for their inaccurate credit reporting following a Chapter 7 discharge.

37.     Thus, Equifax has been on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Equifax is on continued notice that their inadequate

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

38.    Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about February 16, 2022, in the United States Bankruptcy Court for the Northern District of New York.

39.    Plaintiff received an Order of Discharge on or about June 2, 2022.

40.    Thereafter, Plaintiff was not personally liable for any of his dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

41.    Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

42.    Equifax obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Equifax in Plaintiff's consumer reports.

43.    In the Public Records section of Plaintiff's consumer reports, Equifax included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

44.    Equifax is aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

45.     Equifax should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

46.     Instead, Defendant Equifax inaccurately reported an account from Empower Federal Credit Union (ending in *1158) which was discharged in Plaintiff's bankruptcy, with a status of "Closed – Charge Off" and a balance of $2,846.

47.     Defendant Equifax knew or should have known that Plaintiff's bankruptcy was discharged.

48.     Defendant Equifax reported a debt that was in fact discharged in bankruptcy and was therefore required to report this debt as discharged and/or with a zero balance.

*Plaintiff's Damages*

49.     Upon information and belief, had Defendant Equifax accurately reported the Empower account with a zero balance, Plaintiff's credit scores and/or debt to income ratio ("DTI") would have been better.

50.     The false increased debt due to Equifax's inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

51.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, credit denials, having false information disseminated about him and other financial harm.

52.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep,

humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

53.    Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## V.    COUNT I
### Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

54.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

55.    The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

56.    In this case, Equifax both negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

57.    Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

58.    When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

59.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior

cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

60.    Defendant Equifax knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

61.    Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

62.    Additionally, Equifax possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

63.    Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

64.    Yet Equifax inaccurately reported the Empower Account, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

65.    Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA. Accordingly, Equifax deprived Plaintiff of Plaintiff's rights under the FCRA.

66.     Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

67.     Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

68.     Yet in this case, Equifax reported the Empower account, which predated Plaintiff's bankruptcy, as a charge off with a $2,846 balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

69.     Defendant Equifax thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting was inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

70.     Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

71.     Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, denial of credit, dissemination of false information about him, and other financial harm caused by Equifax's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

72.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

73.    Defendant Equifax is a direct and proximate cause of Plaintiff's damages.

74.    Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)    Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.    JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: September 24, 2025

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Tel: (732) 695-3282
Email: yzelman@marcuszelman.com
Attorney for Plaintiff